UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAUN THOMAS,<br><br>    Plaintiff,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC; NICOLE ANDERSON; and KEVIN GARABEDIAN,<br><br>    Defendants. | Civil Action No. 21-11308-MGM |

MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 34)

January 4, 2023

MASTROIANNI, U.S.D.J.

The claims in this case pertain to Defendant Carrington Mortgage Services, LLC's foreclosure sale of Plaintiff Shaun Thomas's residential property after Plaintiff defaulted on his mortgage loan in 2018. Specifically, Plaintiff contends that Defendant breached the mortgage contract by failing to make reasonable efforts to arrange a face-to-face meeting with Plaintiff prior to foreclosure, pursuant to a specific federal regulation alleged to be incorporated by reference into the mortgage contract. Plaintiff also asserts a derivative claim for equitable relief based on Defendant's alleged breach of contract. Defendant now seeks summary judgment on both claims. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

    **I.**    **Background**

The facts stated in this section are undisputed unless otherwise noted. In 2008, Plaintiff obtained a mortgage loan in order to purchase the subject property located at 5 Michel Street, East

Longmeadow, Massachusetts ("Property"). (Defendant's Statement of Undisputed Material Facts ("Def.'s SOF"), Dkt. No. 36, at ¶¶ 1–4; Plaintiff's Statement of Material Facts ("Pl.'s SOF"), Dkt. No. 41, at ¶¶ 1–4). After a series of assignments, the mortgage was ultimately assigned to Defendant on September 12, 2018. (Def.'s SOF at ¶¶ 5–6; Pl.'s SOF at ¶¶ 5–6). The Property has been Plaintiff's mailing address and primary place of residence from 2018 through the present and he continues to reside at the Property. (Def.'s SOF at ¶¶ 7–8; Pl.'s SOF at ¶¶ 7–8).

In October 2013, Plaintiff defaulted on the mortgage loan and received a loan modification, after which the mortgage loan was reinstated and remained current until the events underlying this lawsuit. (Def.'s SOF at ¶¶ 9–10; Pl.'s SOF at ¶¶ 9–10). Plaintiff missed his monthly mortgage payments due on August 1, 2018 and September 1, 2018, but was able to cure those deficiencies. (Dkt. No. 36-11; Dkt. No. 35 at 4 n.3). Plaintiff again missed his monthly mortgage payments due on October 1, 2018, November 1, 2018, and December 1, 2018. He made a late payment on December 13, 2018, which was credited toward the October 1 and November 1, 2018 delinquent payments. Since then, Plaintiff has not made any mortgage payments, including the December 1, 2018 payment. Thus, Plaintiff's mortgage loan went into default. (Def.'s SOF at ¶¶ 11–14; Pl.'s SOF at ¶¶ 11–14).

Defendant asserts its agent, R.R. Donnelley & Sons Company ("RRD"), mailed Plaintiff a letter via Certified Mail on or about September 11, 2018, notifying Plaintiff of his missed payments and risk of foreclosure, advising Plaintiff of the opportunity to arrange a face-to-face interview, and enclosing loss mitigation application forms. (Def.'s SOF at ¶¶ 15–16). Defendant mailed a second and third letter containing the same information via Certified Mail on November 11, 2018 and January 11, 2019. (Def.'s SOF at ¶¶ 17–20). Each letter was addressed to Plaintiff at the Property address. The Vice President of Operations for RRD attests that each letter was sent to Plaintiff via Certified Mail on the date and to the address indicated, in accordance with the regular business practices of RRD when it mails correspondence on behalf of Defendant. (Dkt. No. 36-10). Plaintiff asserts he never

2

received these letters and contends they lack adequate certification by the United States Postal Service that they were dispatched. (Pl.'s SOF at ¶¶ 15–20; Dkt. No. 42 at ¶ 9).

On March 5, 2019, Defendant provided a different agent, National Creditors Connection Inc. ("NCCI"), with a fourth letter generated by Defendant and addressed to Plaintiff at the Property. Defendant instructed NCCI to send a field representative to the Property to deliver the March 5, 2019 letter in person. (Def.'s SOF at ¶¶ 21–23). The letter stated: "As the servicer for your mortgage, [Defendant] wants you to know that you may schedule a face-to-face meeting to discuss your financial circumstances." (Dkt. No. 36-15 at 2). The letter notified Plaintiff that it had sent a representative to the Property to try to arrange a face-to-face meeting, which would "entail a representative of [Defendant] meeting with [Plaintiff] privately" at a later date "to discuss your financial circumstances, gather necessary information and attempt to qualify you for eligible mortgage assistance options." (*Id.*). NCCI dispatched a field representative to the Property on March 6, 2019, who attempted to personally deliver the March 5 letter to Plaintiff. Though NCCI did not make contact with anyone at the Property, the representative taped the letter to the front door of the Property in an envelope with Plaintiff's name. (Dkt. No. 36-14 at ¶ 10; Dkt. No. 36-16). Defendant has also filed three photographs taken on March 6, 2019 of (1) the Property, timestamped at 10:34 a.m.; (2) the front door of the Property with an envelope taped to the door, timestamped at 10:37 a.m.; and (3) the street sign for Michel Street, on which the Property is located, timestamped at 10:38 a.m. An NCCI representative attests it is the regular business practice of NCCI to attempt personal delivery of letters from Defendant by making a trip to the property address listed and, if it is unable to do so, to leave the letter in a sealed envelope with the addressee's name taped to the front door. It is also NCCI's regular business practice to take photographs with timestamps of the properties visited to depict attempted contact and delivery. The dispatched representative then records the transaction details and photographs at or near the time of the visit to a property, which generates a field report sent to

Defendant. (Dkt. No. 36-14 at ¶ 8). NCCI further attests that these practices were followed on March 6, 2019 in the attempted delivery of Defendant's March 5 letter to Plaintiff. (*Id.* at ¶¶ 9–11).

Plaintiff does not dispute that the photographs taken by the NCCI representative accurately depict the Property and show an envelope taped to the front door. (Pl.'s SOF at ¶ 30). However, Plaintiff contends that Defendant's agent did not deliver the March 5, 2019 letter in person because he never received it and because neither he nor his wife, who were home at the time, heard a knock or doorbell ring. (Dkt. No. 42 at ¶¶ 10–11). Specifically, Plaintiff avers that he had worked until approximately 4:30 a.m. on March 6, 2019 and fell asleep at 8:00 a.m. He states that he was sleeping in his bedroom at the time of the attempted delivery, but that his doorbell is "very loud" and he would have heard it and woken up if someone had attempted contact at the front door. Plaintiff further attests that he woke up at approximately 12:30 p.m. when his wife left for a hair appointment and did not find an envelope taped to the front door at that time. (*See id.*). Plaintiff's wife was awake and inside the Property at the time of the attempted delivery, but did not hear a knock or doorbell. She does not indicate where she was inside the Property. Plaintiff's wife states that she left the Property for a hair appointment at 12:38 p.m. via the front door, but did not see an envelope taped to the front door. (Dkt. No. 43). Accordingly, Plaintiff disputes that the March 5, 2019 letter was delivered in person.

Plaintiff completed four requests for mortgage assistance on April 8, 2019, May 13, 2019, July 25, 2019, and November 18, 2019, using forms identical to the loss mitigation forms attached to Defendant's three certified mailings. Defendant responded to those letters, informing Plaintiff that his only possible loss mitigation option was home liquidation via either short sale or a deed-in-lieu of foreclosure. Plaintiff admits that he received these letters, addressed to him and sent to the Property address. After Plaintiff appealed, Defendant affirmed its loss mitigation determination. Plaintiff does not dispute that Defendant informed him he did not qualify for a loan modification, forbearance, or repayment plan and that home liquidation was his only option. Plaintiff also does not dispute that

4

Defendant evaluated him for potential loss mitigation options prior to the foreclosure sale. (Def.'s SOF at ¶¶ 31–39; Pl.'s SOF at ¶¶ 31–39).

Defendant foreclosed on Plaintiff's mortgage and purchased the Property at a foreclosure sale on January 21, 2020. (Def.'s SOF at ¶ 40; Pl.'s SOF at ¶ 40). On June 4, 2021, Defendant sold the Property to Nicole Anderson and Kevin Garabedian (the "Buyers").[1] (Def.'s SOF at ¶ 41; Pl.'s SOF at ¶ 41). Notwithstanding the sale, however, Plaintiff continues to reside at the Property. (Def.'s SOF at ¶ 8; Pl.'s SOF at ¶ 8). Thus, on July 6, 2021, the Buyers initiated a summary process action in state court against Plaintiff, in response to which Plaintiff asserted counterclaims against the Buyers and third-party claims against Defendant, mirroring the claims made in this action. The state court case is currently stayed pending the outcome of this litigation. (Dkt. No. 35 at 9 n.8).

After the mortgage loan went into default in late 2018, Plaintiff does not dispute that he lacked the funds to make the delinquent mortgage payments, cure the default, or reinstate the mortgage loan. (Def.'s SOF at ¶¶ 42–45; Pl.'s SOF at ¶¶ 42–45). Plaintiff further admits that he has made no payments on the mortgage loan to Defendant from January 1, 2019 to the present, including in or around the time of the foreclosure sale, nor has he paid any fees or costs related to the foreclosure, the sale, or the delinquency and default of the mortgage loan. He has not been treated for any alleged emotional distress relating to the foreclosure. (Def.'s SOF at ¶¶ 46–50; Pl.'s SOF at ¶¶ 46–50). Finally, after the Buyers brought the state court eviction suit against Plaintiff, he voluntarily agreed to make monthly use and occupancy payments to the Buyers starting in February 2022. Plaintiff did not make any use and occupancy payments for the Property prior to February 2022. (Def.'s SOF at ¶¶ 51–52; Pl.'s SOF at ¶¶ 51–52).

---

[1] Plaintiff named the Buyers as co-defendants in this action, but it appears service of process was never effectuated. The Buyers have not appeared in this action and Plaintiff does not address their absence from this litigation in his Opposition. Accordingly, Plaintiff's claims against the Buyers have been dismissed in a separate docket entry for failure to prosecute.

Plaintiff brought this action in state court on June 29, 2021 and it was removed to this court on August 11, 2021 on the basis of diversity jurisdiction.[2] (Dkt. No. 1). The remaining claims before the court are breach of contract (Count II) for alleged failure to comply with 24 C.F.R. § 203.604, a federal Housing and Urban Development ("HUD") regulation, and a derivative claim for equitable relief based on the alleged breach of contract (Count I).[3] Defendant now seeks summary judgment on all remaining claims.

## II.     Legal Standard

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 748 F.3d 418, 422 (1st Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *See Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994); *Patco Constr. Co., Inc. v. People's United Bank,* 684 F.3d 197, 206–07 (1st Cir. 2012). The moving party can succeed on a motion for summary judgment by showing that "there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

After the moving party shows the absence of any disputed material fact, the non-moving party bears the burden of placing at least one material fact into dispute. *See Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party "can forestall summary judgment by presenting definite, competent evidence demonstrating the

---

[2] Following a review of the docket in this case, the court issued an order to show cause to clarify the parties' citizenship on December 14, 2022. (Dkt. No. 46). On December 30, 2022, Defendant filed an Amended Notice of Removal, addressing the court's concerns. (Dkt. No. 53). Specifically, Plaintiff is a citizen of Massachusetts; the Buyers are citizens of Rhode Island; and Defendant, through a series of limited liability companies, is a citizen of Wyoming, Tennessee, and California. There is also no dispute that the amount in controversy exceeds $75,000. The court is therefore satisfied that diversity jurisdiction existed at the time of removal.

[3] Count III was dismissed with prejudice on December 21, 2021. (Dkt. Nos. 23, 24).

existence of a genuine dispute about a material fact." *Murray v. Kindred Nursing Centers West LLC*, 789 F.3d 20, 25 (1st Cir. 2015) (citation and internal quotation marks omitted). When ruling on a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party. *See Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003). However, "it is well settled that '[t]he mere existence of a scintilla of evidence'" is insufficient to defeat a properly supported motion for summary judgment. *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[I]n the face of the defendant's properly supported motion for summary judgment, the plaintiff [can]not rest on his allegations," but must present "significant probative evidence" on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 249 (internal citation omitted).

### III.  Discussion

**A.  Breach of Contract (Count II)**

Plaintiff alleges Defendant breached the mortgage contract by failing to comply with paragraph 9(d) of the mortgage. According to Plaintiff—and undisputed by Defendant for purposes of the summary judgment motion—paragraph 9(d) of the mortgage contract incorporates HUD regulation 24 C.F.R. § 203.604(b) and compliance with the regulation is a condition precedent that could give rise to a breach of contract claim. The regulation requires the mortgagee to "have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604(b). The regulation further defines "reasonable effort" as, at minimum, "one letter sent to the mortgagor certified by the Postal Service as having been dispatched" and "one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee[.]" 24 C.F.R. § 203.604(d).

To prevail on a breach of contract claim under Massachusetts law, Plaintiff must demonstrate (1) the existence of a valid, binding contract; (2) that Defendant breached the contract; and (3) that Plaintiff suffered damages as a result of the breach. *See Brooks v. AIG SunAmerica Life. Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007). Defendant does not dispute that the mortgage at issue in this case constitutes a valid, binding contract. Defendant contends, however, that there is no genuine issue of material fact regarding breach or damages. Specifically, Defendant argues the unrebutted evidence shows (a) that it did not breach the mortgage contract because it complied with the regulation by making a reasonable effort to arrange a face-to-face meeting with Plaintiff, and (b) that Plaintiff did not suffer damages as a result of Defendant's alleged breach.

    1. <u>"Reasonable Effort" to Arrange a Face-to-Face Meeting</u>

Defendant does not claim that it had a face-to-face interview with Plaintiff. Defendant instead maintains that it made a "reasonable effort to arrange a face-to-face meeting with [Plaintiff]," as defined by the regulation. 24 C.F.R. § 203.604(b), (d). The unrebutted evidence submitted by Defendant shows that Defendant mailed three letters to Plaintiff via Certified Mail and sent a field representative to the Property to hand-deliver a fourth letter, each notifying Plaintiff of the opportunity to participate in a face-to-face meeting with Defendant. Each letter was addressed to Plaintiff at the Property address, where Plaintiff concedes he still resides and has received all other correspondence from Defendant. Defendant has submitted a copy of each mailed letter, which contain a United States Postal Service tracking number near the header. Defendant's agent, RRD, has also provided an affidavit certifying that the letters at issue were sent via Certified Mail in accordance with its regular business practices. The First Circuit has recently held that such evidence is sufficient to establish a mortgagee's compliance with the mailed letter requirement of 24 C.F.R. § 203.604(d). *See Donahue v. Fed. Nat'l Mortg. Ass'n*, 980 F.3d 204, 208 (1st Cir. 2020), *aff'g* 2019 WL 2176939, at *5–6 (D. Mass. May 20, 2019); *see also Dan-Harry v. PNC Bank, Nat'l Ass'n*, No. 19-1393, 2021 WL 9527627

8

(1st Cir. Apr. 29, 2021), *aff'g* 2019 WL 1253481 (D.R.I. Mar. 18, 2019), *adopting report and recommendation*, 2018 WL 5044235 (D.R.I. Oct. 17, 2018).

In an attempt to argue otherwise, Plaintiff asserts there is a genuine dispute of fact as to whether Defendant sent the letters because he claims he never received them and because Defendant did not submit a certification directly from the United States Postal Service that the letters were dispatched.[4] Both arguments have been rejected by the First Circuit. *See Donahue*, 980 F.3d at 208 n.4 (contention that lender failed to present sufficient evidence that it sent letter certified by Postal Service as having been dispatched was "not persuasive in light of evidence from the record," including copy of the letter with tracking number on it and affidavits from employees stating letter was sent via Certified Mail in compliance with regular business practice); *id.* at 209 n.5 (rejecting non-receipt argument because "the regulation only requires that the mortgag[ee] send the letter; it does not require that the mortgag[or] receive the letter"); *Dan-Harry*, 2018 WL 5044235, at *4–5 ("Plaintiff's denial that he got the certified letter is legally insufficient. A mortgagor's denial of having received the letter does not give rise to a factual dispute regarding the mortgagee's compliance with the requirement to send it."); *id.* at *4 n.7 ("No case supports Plaintiff's contention that business practice evidence is insufficient and summary judgment is improper unless the mortgagee can present sworn testimony from persons with first-hand knowledge able to remember that a particular certified letter was actually placed in the mail . . . ."); *Dan-Harry*, 2019 WL 1253481, at *1–2 (adopting report and recommendation; declining to adopt plaintiff's "creative construction of 24 C.F.R. [§] 203.604(d)" that "'certified by the Postal Service as having been dispatched' means that any proof of mailing must come *from* the Postal Service" because "[t]he plain language of subsection (d) does not restrict the proof the Defendant may rely on to show that it complied with the regulation" and plaintiff's interpretation of the regulation is

---

[4] The arguments made in Plaintiff's Opposition mirror, nearly verbatim, the arguments and citations presented to the First Circuit in *Donahue*. (*Compare* Dkt. No. 40 *with* Dkt. No. 44-1).

9

"contrary to the overwhelming weight of authority"); *Dan-Harry,* 2021 WL 9527627, at *1 (affirming "substantially for the reasons stated in the magistrate judge's Report and Recommendation . . . , the district court's decision . . . , and [*Donahue*]"); *see also Donahue*, 2019 WL 2176939, at *5–6 (finding alleged lack of receipt "immaterial" and holding that failure to submit proof of dispatch from USPS did not preclude summary judgment, in light of other evidence submitted).

As to the in-person visit to the Property, Plaintiff makes several arguments, all of which are unavailing. First, Plaintiff contends that, even if the trip occurred, it did not satisfy the regulation because there is no evidence that the person who visited the Property had the "qualifications or authority to conduct a face-to-face meeting for the purpose of resolving mortgage delinquencies." (Dkt. No. 40 at 19). But "the regulation imposes no such requirement as to the qualifications of the person who was sent to arrange the interview." *Donahue*, 980 F.3d at 210; *see also Dan-Harry*, 2018 WL 5044235, at *5 ("[T]he clear language of § 203.604(d) . . . states that the trip is 'to arrange' the meeting, not to conduct it in the moment.").

Second, Plaintiff asserts that strict compliance with the timing provisions of 24 C.F.R. § 203.604(b) is required, such that Defendant failed to comply with the regulation because it did not make a trip to the Property "before three full monthly installments due on the mortgage [were] unpaid."[5] Yet, once again, Plaintiff's argument has previously been considered and rejected on nearly identical facts. *See Donahue*, 2019 WL 2176939, at *7 ("[Plaintiff] has not identified a case that holds that a reasonable effort toward conducting a face-to-face meeting is condition precedent that requires strict compliance. Several courts have explicitly determined that strict compliance with the three-

---

[5] It is undisputed that Plaintiff made a mortgage payment on December 13, 2018, which was credited toward his missed October and November 2018 payments, and did not make any payments thereafter, including the December 1, 2018 payment or the January, February, or March 2019 payments. Defendant sent an agent representative to the Property for an in-person visit on March 6, 2019. Defendant maintains that it did strictly comply with the timing requirements of the regulation. (Dkt. No. 44 at 6 n.4). The court need not decide, because even if Defendant did not strictly comply, such compliance with the timing provisions is not required and the court concludes that Defendant has fully complied with the substantive requirements of the regulation.

month window is not required."); *Donahue*, 980 F.3d at 210 n.6 ("[T]he only strict timing requirement is that the regulation is satisfied 'prior to initiating foreclosure.'" (quoting *Wells Fargo Bank, N.A. v. Cook*, 31 N.E.3d 1125, 1131 n.10 (Mass. App. Ct. 2015))); *Dan-Harry*, 2019 WL 1253481, at *2 (noting the regulation "is silent concerning whether the mortgagee's efforts [to arrange a face-to-face meeting] must be *completed* within the three-month timeframe" and concluding that mortgagee complied with the regulation where its reasonable efforts began *before* the three-month deadline by sending certified letters, but the trip to the property occurred shortly after the deadline passed).

Finally, Plaintiff argues there remains a genuine dispute of material fact as to whether Defendant's agent actually visited the Property on March 6, 2019 because, although Plaintiff and his wife were present in the home at the time of the visit, neither of them heard anyone at the door and they did not find an envelope on the front door when Plaintiff's wife exited the home around 12:30 p.m. In support thereof, Plaintiff submits two affidavits from himself and his wife. (Dkt. Nos. 42, 43). However, neither affidavit creates a genuine dispute of fact regarding Defendant's compliance with the Property visit requirement. Each affidavit avers that Plaintiff and his wife were home at 10:38 a.m. when Defendant's agent visited the Property. Plaintiff admits that he was asleep in his bedroom at the time of the visit, from approximately 8:00 a.m. to 12:30 p.m. His assertion that he would have woken up if someone had been at the front door because his doorbell "is very loud" is wholly speculative and conclusory. While Plaintiff's wife attests she was awake at the time of the visit and likewise did not hear a knock or doorbell, her affidavit is devoid of any contextual factual information, such as where she was in the Property or what she was doing at the time, that would permit the court to evaluate the relevance or significance of her statement.

As such, neither affidavit is probative evidence that Defendant did not make a trip to the Property. Critically, even accepting the statements in the affidavits as factually true, none of the specific actions (or lack thereof) identified by the affiants are required by the regulation. Section 203.604(d)

requires only that the mortgagee make "one trip to see the mortgagor at the mortgaged property." It does not explicitly require that Defendant knock on a mortgagor's front door or ring a doorbell, if available. It does not require that a member of the mortgagor's household physically see or hear an attempted visit or that Defendant must make repeated attempts at in-person contact until successful. "Nor does it mandate that a letter discussing the face-to-face meeting must be left if the mortgagor is not home" or if in-person contact cannot otherwise be made. *Dan-Harry*, 2018 WL 5044235, at *5. Thus, the affiants' statements that they did not see an envelope taped to the front door when Plaintiff's wife left at approximately 12:38 p.m.—two hours after the undisputed photographs show the letter was left—also miss the proverbial mark. Put simply, Plaintiff cannot graft new legal requirements into the regulation, based solely on his view of what "should" constitute adequate efforts to make in-person contact with the mortgagor at the mortgaged property.

In short, the affidavits do not controvert the other unrebutted evidence showing that Defendant made a trip to the Property and Plaintiff has failed to point to evidence in the record from which a reasonable jury could find that Defendant did not comply with the Property visit requirement. Defendant submitted photographic evidence that its agent visited the Property on March 6, 2019 at approximately 10:38 a.m. and left a sealed envelope on the front door advising Plaintiff of his opportunity to have a face-to-face meeting with Defendant. Plaintiff concedes that the photographs accurately depict the Property and show an envelope taped to the front door, and Plaintiff does not dispute the accuracy or authenticity of the timestamps that appear on the photos. Defendant also submitted a contemporaneous field report from its agent, NCCI, which is consistent with the photographs and Defendant's assertion that it sent a representative to the Property on March 6, 2019 at around 10:38 a.m. And Defendant submitted an affidavit from its agent, NCCI, affirming that it was NCCI's regular business practice to leave a sealed envelope taped to the front door and take photos of a visited Property and that the practice was followed here. As other courts have found on

substantially similar facts, this evidence is sufficient to establish that Defendant made a "reasonable effort" to arrange a face-to-face meeting with Plaintiff by mailing at least one certified letter and making a trip to the Property. *See Donahue*, 980 F.3d at 209–10 (finding the same evidence sufficient); *Dan-Harry*, 2018 WL 5044235, at *4–5 & n.7 (same).

Because Defendant has demonstrated there is no genuine dispute of material fact that it complied with § 203.604(b)'s "reasonable effort" requirement—and that Defendant therefore did not breach its contractual obligation to Plaintiff to do so—summary judgment in favor of Defendant is appropriate.

2. Damages

Plainly, damages are a fundamental element of a breach of contract claim under Massachusetts law. *See Brooks*, 480 F.3d at 586. Here, Plaintiff does not dispute that he did not have sufficient funds and lacked the financial ability to make the missed mortgage payments, cure the default, or reinstate the mortgage loan. He does not dispute that he applied for and was repeatedly evaluated by Defendant for loss mitigation options; he has made no mortgage loan payments to Defendant between January 2019 to the present, including at or around the time of the foreclosure sale; and he has not paid any fees or costs related to the foreclosure, delinquency, and default. (Def.'s SOF at ¶¶ 31–39, 42–49; Pl.'s SOF at ¶¶ 31–39, 42–49). Moreover, Plaintiff still lives in the Property and now makes monthly occupancy payments pursuant to an agreement he voluntarily made with the Buyers, well after this case was initiated. (Def.'s SOF at ¶¶ 51–52; Pl.'s SOF at ¶¶ 51–52).

In sum, Plaintiff does not dispute any of the material facts concerning the damages element of his claim. Indeed, Plaintiff apparently concedes he has suffered no damages as a result of Defendant's alleged failure to make reasonable efforts to arrange a face-to-face meeting. (Dkt. No. 40 (failing to address Defendant's arguments regarding damages in his Opposition)); *Cosme-Perez v. Municipality of Juana Dias*, 110 F. Supp. 3d 357, 376 (D.P.R. 2015) ("Failure to provide a well developed

argument constitutes a waived argument."); *Perez-Reyes v. Walgreens de San Patricio, Inc.*, No. 08-cv-1999, 2010 WL 11679335, at *6 (D.P.R. Sept. 21, 2010) (where plaintiff fails to address argument in response to summary judgment, court will not craft arguments or conduct research on his behalf). His bald assertion in his affidavit that he "would have worked out an arrangement" to avoid foreclosure if he'd had a face-to-face meeting with Defendant is purely speculative and "mere wishful-thinking." *Dan-Harry*, 2019 WL 1253481, at *2. It is clear that "it was Plaintiff's failure to tender a single payment for nearly two years that caused [his] default status and the foreclosure," not the lack of a face-to-face meeting. *Rourk v. Bank of Am. Nat'l Ass'n*, 4:12-cv-42, 2013 WL 5595964, at *6 (M.D. Ga. Oct. 11, 2013), *aff'd*, 587 F. App'x 597 (11th Cir. 2014). This is especially so where, as here, Plaintiff admits he was repeatedly and thoroughly evaluated for loss mitigation options after his submission of several loss mitigation forms as well as appeals following Defendant's written responses. Plaintiff "has not articulated how these conversations would have differed from a face-to-face meeting." *Donahue*, 2019 WL 2176939, at *7. Accordingly, the court concludes that "the lack of an in-person meeting with [Defendant] did not cause [Plaintiff] damages necessary to prevail on a breach of contract claim." *Id.* Summary judgment in favor of Defendant is therefore appropriate for this additional reason.

**B.      Derivative Claim for Equitable Relief (Count I)**

Because the court enters summary judgment for Defendant on the breach of contract claim, and because Plaintiff's claim for equitable relief is derivative of the breach of contract claim and rests on the same underlying allegations that Defendant breached the mortgage contract, Plaintiff's derivative claim for equitable relief must fail as well. (*See* Dkt. No. 1-1 at ¶¶ 28–88 (*compare* Counts I and II)); *Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 35 (1st Cir. 2016) ("[B]ecause [Plaintiff's] breach of contract . . . claim[] fail[s], her derivative claim for equitable relief must fail as well.").

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 34) is GRANTED. Judgment shall issue by separate order in favor of Defendant.

It is So Ordered.

                                                   /s/ Mark G. Mastroianni  
                                                   MARK G. MASTROIANNI  
                                                   United States District Judge